# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-01712-COA

**WALTER CORNEILUS LEWIS A/K/A WALTER CORNELIUS LEWIS A/K/A WALTER C. LEWIS A/K/A WALTER LEWIS**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 12/08/2016 |
| TRIAL JUDGE: | HON. CHRISTOPHER LOUIS SCHMIDT |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/13/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., BARNES AND FAIR, JJ.**

**BARNES, J., FOR THE COURT:**

¶1.    A Harrison County jury convicted Walter Lewis of one count of possession of cocaine.  The trial court sentenced him as a habitual offender to six years in the custody of the Mississippi Department of Corrections (MDOC).  Lewis appeals, arguing that the trial court erred in denying his *Batson*[1] challenge during jury selection.  Finding no error, we affirm.

---

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986).

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

¶2. On December 16, 2014, detectives with the narcotics division of the Gulfport Police Department were making a routine patrol in an unmarked police vehicle in a neighborhood that had numerous drug complaints. The detectives observed Lewis, when he saw the detective's vehicle, toss a small green pill container to the ground which contained an "off-white rock-like object" consistent with crack cocaine. Lewis was taken into custody. Lab tests later showed the container held approximately one gram of cocaine. Lewis was charged with possession of cocaine and pleaded not guilty. He claimed the drugs were not his and he was merely waiting for a ride.

¶3. After a jury trial, Lewis was convicted of the charge and was sentenced to six years in the custody of the MDOC as both a habitual and subsequent offender.[2] Lewis filed a post-trial motion for a new trial or, alternatively, a judgment notwithstanding the verdict (JNOV), raising the *Batson* issue, among others, but the trial court denied his motion. Lewis appeals.

**ANALYSIS**

¶4. On appeal, Lewis raises only the *Batson* issue, claiming the trial court used an incorrect legal standard in denying his challenge. He argues the jury composition violated his rights under the Equal Protection Clause of the Fourteenth Amendment.

¶5. Early in the jury selection process, the defense raised a *Batson* challenge after the State used its first two peremptory strikes against two African-American women. The

---

[2] Lewis's prior felony convictions were also for possession of controlled substances.

defense claimed there was a "clear pattern" of discrimination and thus requested race-neutral reasons for the strikes. The State responded that it had already accepted an African-American female juror.[3] The trial judge ruled that the defense had not made a prima facie case by showing the State's first two peremptory strikes were for a discriminatory purpose, overruling the *Batson* challenge "at this time." Jury selection was completed; the defendant never renewed his *Batson* objection. Ultimately, the minority composition of the twelve-person jury consisted of three African-American females and one Hispanic male, with the defendant being African American.

¶6.    "Peremptory strikes may not be used for the purpose of striking jurors based solely on their race or gender." *Talbert v. State*, 125 So. 3d 66, 73 (¶24) (Miss. Ct. App. 2013) (citing *Batson*, 476 U.S. at 89). An appellate court reviews the trial court's *Batson* ruling with great deference because "finding [the] striking party engaged in discrimination is largely a factual finding." *Love v. State*, 229 So. 3d 717, 720 (¶14) (Miss. Ct. App. 2017) (quoting *Lynch v. State*, 877 So. 2d 1254, 1270 (¶46) (Miss. 2004)).

¶7.    There is a three-step analysis to a *Batson* challenge:

(1) the defendant must make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose;

(2) once the defendant has made out a prima facie case, the burden shifts to the State to explain adequately the racial [or sexual] exclusion by offering permissible, race-neutral justifications for the strikes; and

(3) if a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful racial [or sexual] discrimination.

---

[3] Defense counsel had mistakenly thought this juror was white.

*Pruitt v. State*, 986 So. 2d 940, 942-43 (¶8) (Miss. 2008).  In order to satisfy the first step of making a prima facie case, the defendant must produce "evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred.  If the defendant fails to make out a prima facie case showing a discriminatory purpose, the inquiry ends."  *Lomax v. State*, 220 So. 3d 211, 214 (¶14) (Miss. Ct. App. 2017) (citation omitted).

¶8.    Here, the trial court ruled that Lewis did not satisfy the first step of his *Batson* challenge by showing the State's first two peremptory strikes were for a discriminatory purpose.  On appeal, Lewis argues that the trial judge did not make any finding for his prima facie case.  Moreover, Lewis claims the wrong legal standard was used because the trial judge focused his analysis on the one potential minority juror that was kept rather than the two potential jurors stricken by the State, in the following exchange:

> [DEFENSE COUNSEL]:    Judge, they have struck Ebony Simmons, a black female [juror number 33].  And then the next black we reach on the jury venire, Torra Fields [juror number 35], they use S-2.
>
> . . . .
>
> [DEFENSE COUNSEL]:    That clearly shows a pattern and we would press race neutral reasons for [striking potential jurors] 33 and 35.
>
> [PROSECUTOR]:    Your Honor, we've already accepted Ms. Dedeaux [juror number 32], who is the first black female.
>
> [DEFENSE COUNSEL]:    I had her down as white.
>
> THE COURT:    I did not make an observation whether she was a minority.

4

| | |
|---|---|
| [PROSECUTOR]: | She appeared to be that way to the State, your Honor, with her features. |
| [DEFENSE COUNSEL]: | I wrote her down as white. |
| THE COURT: | Ebony Simmons [juror number 33] is a minority? |
| [DEFENSE COUNSEL]: | Black female. |
| THE COURT: | As is [juror number] 35 [Torra Fields]? |
| [DEFENSE COUNSEL]: | Yes, sir. |
| THE COURT: | All right. I don't believe accepting [juror number] 32 as a minority, and then being accepted by the State, that the defense has made a prima facie case to establish that the State is discriminating against members of a minority. So the *Batson* challenge at this time is overruled, subject to further review, if there [are] other members of the minority protected class [who] are stricken for cause by the State. |

¶9. Lewis contends "[t]hat the prosecutor accepted other black persons as jurors is no defense to a *Batson* claim," as stated in *Chisolm v. State*, 529 So. 2d 635, 637 (Miss. 1988). However, *Chisolm*, issued two years after *Batson*, is distinguishable from this case. In *Chisolm*, the defense successfully made a prima facie case for discrimination, as nine of the prosecution's ten peremptory challenges were used to exclude African Americans from the jury for an African-American defendant. *Id.* at 637-38. The trial court's acceptance of the race-neutral reasons given by the prosecution for the nine strikes was affirmed. *Id.* at 639.

¶10. Here, the State had only struck two jurors at the time of the defense's *Batson* challenge, with the court ruling that the first step of *Batson* had not been established; thus,

5

the inquiry ended.[4] While the trial judge noted one African American had been accepted at this point, the trial judge was not basing his entire ruling on this fact, but the "totality of relevant facts." The State's striking of two African-American females did not show a "pattern" of discrimination, nor did the trial judge's mention of an African American on the jury indicate an improper legal standard was applied.

¶11. Lewis also complains that the trial court did not seek to determine the race of juror number 32 (Ms. Dedeaux) but merely accepted the State's assertion that she was African American. We disagree. Lewis did not ask the trial court to do so. Additionally, defense counsel recognized his trial error by admitting in his post-trial motion that juror number 32 "was a very light skinned minority." We cannot hold the trial judge in error when he was, in fact, correct.

¶12. Ultimately, four jurors, or one-third of the jury, were minorities. The trial judge did not abuse his discretion in finding no inference of purposeful racial discriminatory intent from the State's first two peremptory strikes. Finally, the trial judge's finding of no prima facie case was a sufficient ruling—no further explanation was necessary.

¶13. Accordingly, we affirm the trial court's denial of Lewis's *Batson* challenge.

¶14. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**

---

[4] In *Scott v. State*, 981 So. 2d 964, 969-70 (¶¶18, 22) (Miss. 2008), the Mississippi Supreme Court found that even when the State used nine peremptory strikes against African American potential jurors, without more facts provided by the defense, the strikes alone were insufficient to make a prima facie showing of discrimination.